**Robert E. DIETRICH, Plaintiff,**

v.

**LIBERTY MUTUAL INSURANCE COMPANY, Defendant.**

**Civ. No. H90–053.**

United States District Court,
N.D. Indiana,
Hammond Division.

Feb. 22, 1991.

3315.

Jerry T. Jarrett, Hammond, Ind., for plaintiff.

Frank J. Galvin, Jr. and Robert H. Bahner, Hammond, Ind., for defendant.

## MEMORANDUM OPINION AND ORDER

LOZANO, District Judge.

The matters before the court include defendant's, Liberty Mutual Insurance Company ("Liberty"), Motion to Dismiss filed on April 16, 1990, Motion to Dismiss and Opposition to F.R.C.P. 15(a) Motion for Leave to Amend filed on October 22, 1990, and Motion to Dismiss Plaintiff's First Amended Complaint filed on January 18, 1991. For the reasons set forth herein, Liberty's motions to dismiss are GRANTED.

BACKGROUND

Robert E. Dietrich ("Dietrich"), an employee of Pittsburgh Metals Purifying Company in Hammond, Indiana, injured his back while working on or about February 25, 1985. Pittsburgh Metals Purifying Company was covered by a workmen's compensation policy of insurance provided by Liberty. Dietrich reported the injury to his employer and was referred to the company's physician, Dr. James Claro. Dietrich was under the care of Dr. Claro through April 1985 at which time Dietrich was released to return to work at Pittsburgh Metals Purifying Company. After working for approximately ten (10) days, Dietrich's injury became further aggravated and he returned to Dr. Claro's care. Dietrich's condition did not improve from April 1985 to August 1985 and he subsequently requested additional diagnostic testing for purposes of treating his back injuries. In August 1985, Dr. Claro advised Dietrich that Liberty would not authorize additional testing, and on August

20, 1985 Dr. Claro released Dietrich to return to work. Before Dietrich could complete one day of work, he had to be taken to the hospital for back pain and injuries. Dietrich has not returned to work since that date.

Dietrich alleges that he performed all the conditions required of him under the workmen's compensation policy issued by Liberty, and that he therefore was entitled to medical benefits, medical treatment, disability benefits, and permanent impairment benefits as provided by the insurance policy and pursuant to the Indiana Workmen's Compensation Act. Dietrich contends that, by refusing further disability benefits, Liberty violated provisions of the Indiana Workmen's Compensation Act, committed fraud, and breached a fiduciary duty to Dietrich.[1] Dietrich further contends that as a direct and proximate result of Liberty's conduct, Dietrich sustained financial damages, and suffered psychological and physical distress. Dietrich prays for relief in the form of compensatory and punitive damages.

## DISCUSSION

In ruling on a Rule 12(b)(6) motion to dismiss, this court must follow "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80, 84 (1957). This court must accept "all allegations in the complaint as true", and must "view all allegations in the light most favorable to the plaintiff." *Collins v. County of Kendall, Ill.*, 807 F.2d 95, 99 (7th Cir.1986) *cert. denied*, 483 U.S. 1005, 107 S.Ct. 3228, 97 L.Ed.2d 734 (1987) (citations omitted). *See also Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59, 65 (1984); *Gomez v. Illinois State*

*Board of Education*, 811 F.2d 1030, 1039 (7th Cir.1987). In order to prevail, the defendant "must demonstrate that the plaintiff's claim, as set forth by the complaint, is without legal consequence." *Gomez*, 811 F.2d at 1039.

## INDIANA UNFAIR CLAIMS PRACTICES ACT

Title 27 of the Indiana Code codifies Indiana insurance law. Article 4 of this Title deals with unfair competition, unauthorized insurers, and foreign insurers. Chapter 1 of Article 4 allows the Commissioner of Insurance to issue cease and desist orders against unfair competition within the insurance industry. *See generally* I.C. 27–4–1–5 (statement of charges by commissioner, notice and hearing, intervention); I.C. 27–4–1–5.5 (unfair claims settlement practice complaint filed by individual with the commissioner and commissioner's response); I.C. 27–4–1–6 (cease and desist order after hearing by commissioner); I.C. 27–4–1–13 (cumulative powers and remedies vested in the commissioner and the department). Section 4.5 of Chapter 1 contains a list of unfair claims settlement practices.

■ Section 18 of Article 4, Chapter 1 provides as follows:

This article does not create a cause of action other than an action by:

(1) the commissioner to enforce his order; or

(2) a person, as defined in section 1 of this chapter, to appeal an order of the commissioner.

I.C. 27–4–1–18. The first section of Chapter 1 describes the purpose of the chapter and does not contain definitions. Therefore, it is necessary to look to I.C. 27–4–1–2 for definitions of terms as used in the chapter. In section 2, "person" is defined as

---

1. To the extent that Dietrich alleges a cause of action for intentional injury to his person or to personal property interests, such cause accrued no later than August 1985. The applicable statute of limitations provides that claims for intentional injury to person or personal property must be filed within two years of the accrual date. I.C. 34–1–2–2. Thus, Dietrich's Complaint, originally filed on February 6, 1990, is time-barred with respect to Dietrich's claim of intentional injury to his person or to personal property. Notably, Dietrich has not presented any argument to the contrary.

... any individual, corporation, company including any farmers' mutual insurance company, association, partnership, firm, reciprocal exchange, inter-insurer, Lloyds insurers, society, fraternal benefit society, lodge, order, council, corps, and any other association or legal entity, *engaged in the business of insurance,* including but not in limitation of the foregoing, agents, brokers, solicitors, advisors, auditors, and adjusters.

I.C. 27–4–1–2 (emphasis added). Thus, chapter 1 creates a cause of action only for the Commissioner of Insurance or for entities in the business of insurance who wish to appeal an order of the commissioner, not for private individuals such as Dietrich. Accordingly, Dietrich's allegations that Liberty violated I.C. 27–4–1–4.5 do not state a claim upon which relief may be granted.

## BAD FAITH AND BREACH OF FIDUCIARY DUTY

■ The Workmen's Compensation Act ("Act") creates a contract between an employer and employee and thus between an employee and the insurer. *Jones v. National Union Fire Ins. Co.,* 664 F.Supp. 440, 447 (N.D.Ind.1987) (citations omitted). Once an employer procures workmen's compensation insurance, the Act operates "directly upon the insurance contract[ ] and so extend[s] the insurer's obligation to the employee." *Id.* Thus, to the extent that the Act governs an insurance contract, and because insurers owe their insureds an obligation to deal in good faith, the insurer comes to owe the same obligation of good faith to the employee of the insured employer. *Id.* However, the duty to deal in good faith is owed "only to persons who have, or claim to have, suffered injury, death or disease arising out of the *course of their employment." Id.* (emphasis added). In sum, Liberty owed Dietrich a duty to deal with him in good faith only by

virtue of Dietrich's back injuries which occurred at Pittsburgh Metals Purifying Company.

■ The Worker's Compensation Board of Indiana derives its authority to conduct proceedings from the Indiana Code. Specifically, I.C. 22–3–1–2 provides that "[t]he worker's compensation board shall administer the worker's compensation law...." Rights and remedies concerning disabilities arising out of or in the course of employment are *exclusively* within the realm of Indiana's Worker's Compensation Board. *See* I.C. 22–3–2–6. As previously noted, Liberty's duty to deal in good faith arose out of the course of Dietrich's employment. Accordingly, Dietrich's argument that Liberty breached a contractual duty to deal in good faith can only be adjudicated before the Worker's Compensation Board of Indiana. *See Jones,* 664 F.Supp. at 447.[2]

■ Likewise, Dietrich cannot maintain a cause of action for breach of fiduciary duty with respect to the workmen's compensation policy at issue. Assuming, *arguendo,* that a fiduciary relationship existed, any fiduciary duty owed by Liberty to Dietrich could exist only by virtue of Dietrich's disablement arising out of and in the course of his employment. Dietrich's remedy for the alleged breach of fiduciary duty is exclusively within the realm of the Indiana Worker's Compensation Board. Accordingly, Dietrich's breach of fiduciary duty allegations state no claim upon which relief can be obtained in federal court pursuant to Indiana law. *See generally, Jones,* 664 F.Supp. at 446–448.[3]

## FRAUD

By an order filed on January 8, 1991, this court granted Dietrich's Motion for Leave to File Amended Complaint. Pursuant to that order, Liberty responded in a timely

**2.** While Indiana does not appear to recognize an independent cause of action for breach of the duty to deal in good faith, allegations of bad faith "may warrant additional or punitive damages when coupled with [another appropriate cause of action]." *Jones,* 664 F.Supp. at 448 (citations omitted).

**3.** Moreover, Dietrich cannot base his breach of fiduciary duty claim on the contention that he is a third-party beneficiary of the workmen's compensation policy issued by Liberty. Indiana case law holds that employees are not third-party beneficiaries of workmen's compensation insurance policies. *Baker v. American States Ins. Co.,* 428 N.E.2d 1342, 1347 (Ind.App.1981).

fashion with respect to the fraud allegations in the First Amended Complaint For Damages. Dietrich was allowed to reply to Liberty's response if he did so by January 23, 1991. To date, Dietrich has failed to reply to Liberty's response.

Rule 12(b) provides that, with respect to a motion to dismiss for failure to state a claim upon which relief can be granted, if matters outside the pleading are presented to the court, the motion may be treated as one for summary judgment and disposed of as provided in Fed.R.Civ.P. 56. Rule 12(b) also provides that all parties must be given a reasonable opportunity to present material made pertinent to such a motion by Rule 56. Attached to Liberty's Motion to Dismiss Plaintiff's First Amended Complaint are various affidavits and other materials extraneous to the pleadings. Moreover, Dietrich was given a reasonable opportunity to present any materials pertinent to Liberty's motion and has wholly failed to do so. Nor has Dietrich requested additional time in which to respond to Liberty's motion. Accordingly, under Rule 12(b), this court will treat the motion as one for summary judgment pursuant to Rule 56.

Rule 56(c) provides that summary judgment is proper only if it is demonstrated "that there is no genuine issue as to any material fact, and that the moving party is entitled to a judgment as a matter of law." *Walter v. Fiorenzo*, 840 F.2d 427, 434 (7th Cir.1988); *Beard v. Whitley County R.E. M.C.*, 840 F.2d 405, 409 (7th Cir.1988); *Roman v. U.S. Postal Service*, 821 F.2d 382, 385 (7th Cir.1987); *McGraw-Edison Co. v. Walt Disney Productions*, 787 F.2d 1163, 1167 (7th Cir.1986); *Federal Deposit Insurance Corp. v. Meyer*, 781 F.2d 1260, 1267 (7th Cir.1986). "Whether a fact is material depends on the substantive law underlying a particular claim and 'only disputes over facts which might effect the outcome of the suit under governing law will properly preclude the entry of summary judgment.'" *Walter*, 840 F.2d at 434 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202, 211 (1986)).

The burden is upon the moving party to establish that no material facts are in genuine dispute, and any doubt as to the existence of a genuine issue must be resolved against the moving party. *Donald v. Polk County*, 836 F.2d 376 (7th Cir.1988); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160, 90 S.Ct. 1598, 1610, 26 L.Ed.2d 142 (1970); *Backes v. Valspar Corp.*, 783 F.2d 77, 79 (7th Cir.1986). To preclude summary judgment, a non-moving party must show a material issue of fact. "A party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a *genuine* issue of material fact which requires trial." *Beard*, 840 F.2d at 410. Therefore, if a party fails to establish the existence of an essential element of its case on which it bears the burden of proof at trial, summary judgment will be appropriate. In this situation, "there can be no 'genuine issue as to any material fact', since a complete failure of proof concerning an essential element of a non-moving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265, 273 (1986). *See also Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511, 91 L.Ed.2d at 212.

A plaintiff cannot rest on pleadings once a defendant files a motion for summary judgment; rather, the plaintiff becomes obligated to affirmatively demonstrate that there is a genuine issue of material fact which requires trial. *Beard v. Whitley County R.E.M.C.*, 840 F.2d 405, 410 (7th Cir.1988) (citations omitted). Here, Dietrich failed to respond to Liberty's motion and therefore failed to demonstrate by any means that Liberty committed the alleged fraud against him. Certainly, Dietrich bears the burden of establishing the existence of a genuine issue of material fact with respect to the elements of his fraud cause of action. "A district court need not scour the record to make the case of a party who does nothing." *Hermann v. City of Chicago*, 870 F.2d 400, 404 (7th Cir.1989). In sum, based on the record before the court at this time, no genuine issue of material fact exists with respect to

Dietrich's allegations of fraud and Liberty is entitled to summary judgment in its favor.

CONCLUSION

For the reasons set forth herein, Liberty's Motion to Dismiss, Motion to Dismiss and Opposition to F.R.C.P. 15(a) Motion for Leave to Amend, and Motion to Dismiss Plaintiff's First Amended Complaint are GRANTED.